UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| **MORINVILLE,** <br><br> Plaintiff, <br><br> v. <br><br> **OVERWATCH DIGITAL HEALTH, INC. ET AL.,** <br><br> Defendants. | Case No. 20-cv-00980-ALM-KPJ |

### DEFENDANT BIOEYE LTD.'S ANSWER TO PLAINTIFFS' ORIGINAL COMPLAINT

COMES NOW BioEye Ltd. ("BioEye"), and for its answer to Plaintiffs' Complaint [Dkt. No. 1] (the "Complaint") states as follows:

### ANSWER

1. ALLEGATION NO. 1:

> I. ATTEMPT TO SECURE COUNSEL:
>
> Please answer the following concerning your attempt to secure counsel.
>
> A. In the preparation of this suit, I have attempted to secure the aid of an attorney as follows: (circle one)
>   1. Employ Counsel
>   2. Court - Appointed Counsel
>   3. Lawyer Referral Service of the State Bar of Texas, P. O. Box 12487, Austin, Texas 78711.
> B. List the name(s) and address(es) of the attorney(s):
>
> Bryan Farney, Georgetown TX
> Erick Robinson, Houston, TX
>
> C. Results of the conference with counsel:
>
> Attorney fees exceed the value of the case.

**ANSWER:**  BioEye lacks knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph.

2.  ALLEGATION NO. 2:

> II. List previous lawsuits:
>
>> A. Have you filed other lawsuits in state or federal court dealing with the same facts
>> involved in this action or any other incidents? _____ Yes __X___ No

**ANSWER:**  BioEye admits that it has not received service of any other lawsuit filed by the Plaintiff dealing with the same facts. BioEye lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph.

3.  ALLEGATION NO. 3:

> III. Parties to this suit:
>> A. List the full name and address of each plaintiff:
>>> Pla #1      Paul Morinville
>>> 514 Wharton Ave
>>> Altoona, PA 16602
>>> 512-294-9563
>>> paul@morinville.net

**ANSWER:**  For purposes of pleading, BioEye admits this allegation.

4. ALLEGATION NO. 4:

> B. *List the full name of each defendant, their official position, place of employment and full mailing address.*
>   Dft #1: Overwatch Digital Health, Inc.
>       17440 Dallas Parkway
>       Suite 230
>       Dallas, TX 75287
>   Dft #2: BioEye, LTD.
>       HaTsedef St 8, Hofit
>       Israel
>   Dft #3 Rision Limited
>       Level 24/44 St Georges Terrace, Perth WA 6000
>       Australia
>   Dft #4 Clive Barrett
>       c/o Quantum Partners, Level 1, 95-97 Grafton Street Bondi Junction NSW 2022
>       Australia
>   Dft #5 Emmanual Correia
>       c/o Peleton Capital Limited
>       Level 8/2 Bligh St, Sydney NSW 2000
>       Australia

**ANSWER:** BioEye admits that (a) BioEye's mailing address is correctly alleged and (b) on information and belief, that the mailing address of Overwatch Digital Health, Inc. ("Overwatch"), Clive Barrett, and Rision Limited is each correctly alleged. BioEye lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph.

BioEye asserts that BioEye, Rision Limited, Clive Barrett, and Emmanuel Correia can be noticed of pleadings in this matter through their undersigned counsel of record in this case through mail to Parkins Lee & Rubio LLP, Attn Lenard M. Parkins and R. J. Shannon, Pennzoil Place, 700 Milam Street, STE 1300, Houston, Texas 77002 and email to lparkins@parkinslee.com and rshannon@parkinslee.com.

5. ALLEGATION NO. 5:

> My name is Paul Morinville of Altoona, Pennsylvania. I have been involved in technology companies and technology startups since 1993. I worked as an executive at Dell Technologies, and as a CEO and other executive positions of multiple tech startups. I founded US Inventor, Inc., a lobbying firm in Washington DC advocating for startups and patent protection. I am an inventor with 9 issued patents and many pending patent applications. I am the president of SemiComm HK, a Hong Kong company licensing technology in Asia.

**ANSWER:** BioEye admits that the Plaintiff (a) correctly stated the Plaintiff's name and (b) represented to BioEye that the Plaintiff has experience in technology companies and technology startups and was involved in lobbying in Washington, D.C. BioEye lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph.

6. ALLEGATION NO. 6:

> Prior to June 2019, Overwatch Digital Health Inc (Overwatch) had technology running on a smart watch that measured movement and, using artificial intelligence in the cloud, identified if the movement was indicative of an epileptic seizure. This market was understood, and the product was close to launch.

**ANSWER:** BioEye admits that Overwatch had technology running on a smart watch prior to June 2019 that measured movement to identify movement indicative of an epileptic seizure. BioEye denies the remaining allegations of this paragraph, including any implication that Overwatch and BioEye at any point formally or *de facto* merged or became a single entity. BioEye and Overwatch have consistently maintained independent and separate legal identities, legal representation, management, officers, and financial operations and reporting.

7. ALLEGATION NO. 7:

> Also prior to June 2019, BioEye LTD (BioEye) had technology running on a smartphone that took a video recording of eye movement and pupillary reaction to light (PLR), and using the cloud, applied artificial intelligence to identify non-normal differences in eye movement and PLR. BioEye had targeted their technology to identify the early signs of cognitive degeneration. But this involved collecting data over many years, so the company would not have a sellable product for many years.

**ANSWER:** BioEye denies that it would not have a sellable product for many years but otherwise admits these allegations.

8. ALLEGATION NO. 8:

> When I became involved, BioEye and Overwatch had recently completed a merger forming a new entity (Overwatch/BioEye). The merger was intended to consolidate management and funding to launch the Overwatch product, and to identify new markets for BioEye technology so that BioEye technology could be brought to market much sooner. The merger was documented, executed, and completed for all practical purposes.

**ANSWER:** BioEye denies these allegations. BioEye never merged with Overwatch. BioEye and Overwatch conducted discussions about a potential merger in connection with the reverse takeover transaction involving Rision (the "RTO"), but the RTO was never completed. BioEye and Overwatch have consistently maintained independent and separate legal identities, legal representation, management, officers, and financial operations and reporting. The announcement and media release by Rision Limited attached as Exhibit A hereto correctly describes the relationship between the separate Overwatch and BioEye entities and the contemplated RTO.

9. ALLEGATION NO. 9:

> Clive Barrett was an investor and board member of both BioEye and Overwatch. Emmanuel Correia was a board member of Overwatch. Both became board members of Overwatch/BioEye with responsibility for the direction of Overwatch/BioEye operationally and financially. Terry Fokas, the CEO of Overwatch was made CEO of Overwatch/BioEye and was a board member.

**ANSWER:** BioEye admits that (a) Clive Barrett was and is an equity investor in and board member of BioEye and (b) Terry Fokas was the CEO of Overwatch. BioEye lacks knowledge or information sufficient to form a belief about the truth of the allegations regarding the positions of Mr. Barrett or Mr. Correia in Overwatch. BioEye denies the remaining allegations of this paragraph.

10. ALLEGATION NO. 10:

> Rision Limited (Rision) is a company domiciled in Australia and listed on the Australian Stock Exchange (ASX). Adam Sierakowski was the CEO of Rision.

**ANSWER:** BioEye admits these allegations.

11. ALLEGATION NO. 11:

> The business plan was for Overwatch/BioEye to merge into Rision in a reverse takeover (RTO) in April of 2020. Overwatch and BioEye would become brands under Rision. Rision would be publicly traded on the ASX in April 2020 with a value set at $15,000,000 (fifteen million dollars).

**ANSWER:** BioEye admits that BioEye, Overwatch, and Rision Limited were working to effectuate the described transaction at one point in time, but clarifies that the contemplated RTO fell apart and was never consummated. BioEye lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph.

12. ALLEGATION NO. 12:

> In June 2019, Terry Fokas, CEO of Overwatch/BioEye contacted me to inquire if I would accept employment for BioEye to identify viable markets for BioEye technology and develop the technology for those markets. This work is generally referred to as product management and product marketing.

**ANSWER:** BioEye admits that Terry Fokas was the CEO of Overwatch and that Mr. Fokas contacted the Plaintiff to engage the Plaintiff to provide services for Overwatch. BioEye denies that Mr. Fokas was the CEO of (a) BioEye or (b) any merged entity of Overwatch and

BioEye because such merger never occurred. BioEye lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph.

13. ALLEGATION NO. 13:

> I was offered $15,000 per month in salary and 2% of Rision shares upon completion of the RTO with the BioEye title of Product Manager, which was later retitled to Vice-President Product Development. The value of the promised Rision shares was $300,000.

**ANSWER:** BioEye denies that (a) BioEye or any of its authorized representatives offered the Plaintiff any compensation or a BioEye title and (b) Terry Fokas had authority to offer employment, other form of engagement, or title with BioEye. BioEye lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph.

14. ALLEGATION NO. 14:

> However, Overwatch/BioEye funding commitments to get to the RTO with Rision were limited and I was asked to delay payment of a portion of my full salary until the completion of the RTO, which at that time I would be paid in full.

**ANSWER:** BioEye denies that (a) any merged entity of Overwatch and BioEye ever existed because no merger ever occurred and (b) the non-existent entity was subject to funding commitments. BioEye denies further that BioEye ever agreed to pay Plaintiff a salary, provide any compensation to Plaintiff, or requested that the Plaintiff accept delayed payment of a portion of his salary until completion of the failed RTO. BioEye lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph.

15. ALLEGATION NO. 15:

> I agreed with these terms and began work for Overwatch/BioEye in July 2019.

**ANSWER:**  BioEye denies that (a) BioEye ever employed or otherwise engaged the Plaintiff, (b) BioEye ever agreed to pay Plaintiff a salary or provide any compensation to Plaintiff, (c) any merged entity of Overwatch and BioEye ever existed because no merger ever occurred. BioEye lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph.

16. **ALLEGATION NO. 16:**

> I initially received $2,500 of the $15,000 salary for the months of July 2019, August 2019, September 2019, and October 2019. I then received $3,000 of the $15,000 salary for the months of November 2019 and December 2019. Then I received $5,000 of the $15,000 salary for the months of January 2020, and February 2020.

**ANSWER:**  BioEye denies that BioEye ever paid (or owed) the Plaintiff any money as alleged. On information and belief, any amounts paid to the Plaintiff were paid by Overwatch. BioEye lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph.

17. **ALLEGATION NO. 17:**

> In March 2020, Overwatch/BioEye was informed that, due to the Covid-19 pandemic, the RTO would be delayed until August 2020. I was informed that funding the operations of Overwatch/BioEye had not been planned for this delay. This meant that there was not enough cash to pay salaries. I was asked to continue work without pay until the RTO in August at which time I would be paid in full for all back pay and be awarded the previously agreed upon 2% of Rision.

**ANSWER**: BioEye admits that the RTO was delayed due to the Covid-19 pandemic and that Overwatch, BioEye, and Rision Limited aimed to effectuate the RTO in August 2020. BioEye denies that (a) any merged entity of Overwatch and BioEye ever existed because no merger ever occurred and (b) BioEye was ever obligated to pay Plaintiff a salary or provide any compensation to Plaintiff. BioEye lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph.

18. ALLEGATION NO. 18:

> The value of the unpaid delayed compensation was at least $199,000. The value of the unpaid shares in Rision is $300,000. The total unpaid compensation is $499,000.

**ANSWER**: BioEye denies that the Plaintiff was or is entitled to any compensation from BioEye. BioEye lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph.

19. ALLEGATION NO. 19:

> During my employment with Overwatch/BioEye, I was exclusive to BioEye products and none of my duties included any Overwatch products. I was given a BioEye title, BioEye business cards and a BioEye email address.

**ANSWER**: BioEye denies that (a) any merged entity of Overwatch and BioEye ever existed or employed or otherwise engaged the Plaintiff because no merger ever occurred, (b) that BioEye ever employed or otherwise engaged the Plaintiff, and (c) BioEye or its authorized representatives gave the Plaintiff any BioEye title or business cards.

BioEye admits that BioEye issued the Plaintiff a BioEye email address in response to a request from Terry Fokas, made while Overwatch and BioEye were collaborating in anticipation of the failed RTO. As part of the collaboration, Overwatch provided product requirements, sales, and marketing support to BioEye while BioEye provided engineering and software development services to Overwatch. The purpose of the Plaintiff's BioEye email, according to the request from Mr. Fokas, was to avoid complicated explanations of the pre-merger relationship between Overwatch and BioEye in connection with the Plaintiff's lobbying efforts. Any emails sent to the Plaintiff's BioEye email account were to be automatically forwarded to the Plaintiff's Overwatch email account. A copy of the communication from Mr. Fokas to Eran Ferri—BioEye's CEO— and the Plaintiff regarding this arrangement is attached hereto as Exhibit B.

BioEye lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph.

20. ALLEGATION NO. 20:

> I identified, researched, tested, and developed products for three independent markets based on BioEye technology:
> a. law enforcement drug and impairment detection,
> b. concussion detection, and
> c. early-stage sepsis detection.

**ANSWER**: BioEye admits that the Plaintiff contributed to BioEye products for law enforcement drug and impairment testing using BioEye's technology in the U.S. market. BioEye admits further that the Plaintiff worked to a significantly lesser extent on BioEye's concussion detection and sepsis detection products. BioEye lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph.

21. ALLEGATION NO. 21:

> Each of these markets have potential market revenue exceeding $500,000,000 per year for a total annual revenue potential exceeding $1,500,000,000.

**ANSWER**: BioEye lacks knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph.

22. ALLEGATION NO. 22:

> Each of these markets are actively being pursued by BioEye.

**ANSWER**: BioEye denies this allegation with respect to (a) any of the markets in the U.S. and (b) law enforcement and impairment detection. BioEye admits to currently pursuing business regarding concussion and sepsis detection in markets outside of the U.S. and that it may in the future pursue the markets referenced in the Complaint.

23. ALLEGATION NO. 23:

> My employment activities included working directly with potential customers and United States government agencies to ensure that the products fit the markets. I formed requirements, use cases, technology features, and technical, training and customer documentation all of which are currently being used by BioEye.

**ANSWER**: BioEye admits that the Plaintiff worked directly with potential customers and government agencies on matters related to the BioEye technology for drug impairment detection while the Plaintiff was engaged by Overwatch. BioEye denies that BioEye employed or otherwise engaged the Plaintiff. On information and belief, the Plaintiff's work for Overwatch with respect to BioEye's technology was almost exclusively on drug impairment for law enforcement in anticipation of the failed RTO, which is not a market that BioEye is currently pursuing. BioEye lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph.

24. ALLEGATION NO. 24:

> My duties were consistent with executive level product management and marketing. I was listed in BioEye company documents, websites, and prospectuses seeking funding and the listing application submitted to the ASX as the company's Vice-President Product Development.

**ANSWER**: BioEye denies that the Plaintiff was listed by BioEye in BioEye's company documents, websites, prospectuses seeking funding, or listing applications submitted to the ASX. BioEye admits that Plaintiff was listed on certain prospectuses seeking funding prepared by Overwatch. BioEye lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph.

25. ALLEGATION NO. 25:

> I am also an inventor on intellectual property related to the three afore-mentioned BioEye markets and a named inventor on BioEye patent applications that were filed with the United States Patent and Trademark Office:
>
> > Title: ENHANCED OCULOMOTOR TESTING DEVICE AND METHOD USING AN ADD-ON STRUCTURE FOR A MOBILE DEVICE
> > Application No.: 16/724,356
> > Filing Date: December 22, 2019
> > Inventors: Paul Morinville; Dovi Yellin

**ANSWER**: BioEye admits that the Plaintiff was listed as a co-inventor, along with Dovi Yellen, in the single patent application indicated in the Complaint (the "Patent Application"). BioEye denies that the Plaintiff was an inventor of any other BioEye patent applications filed with the United States Patent and Trademark Office or any other jurisdictions. BioEye lacks knowledge or information sufficient to form a belief about the truth of any remaining allegations of this paragraph.

By way of further answer, BioEye asserts that the Patent Application was filed in the names of Dovi Yellin and the Plaintiff as co-inventors and that Yellin's rights as co-inventor in the Patent Application have been assigned to BioEye.

26. ALLEGATION NO. 26:

> I did not assign my rights to Overwatch/BioEye for this patent application.

**ANSWER**: BioEye admits that (a) the Plaintiff did not assign his rights to BioEye and (b) the Plaintiff did not assign his rights to the non-existent "Overwatch/BioEye." BioEye denies any implication that any merged entity of Overwatch and BioEye ever existed because no merger ever occurred. BioEye lacks knowledge or information sufficient to form a belief about the truth

of whether the Plaintiff assigned his rights in the Patent Application to Overwatch or any other party.

27. ALLEGATION NO. 27:

> The primary day-to-day management of Overwatch/BioEye was performed by Terry Fokas under the direct supervision and direction of Clive Barrett and Emmanuel Correia.

**ANSWER**: BioEye denies that (a) any merged entity of Overwatch and BioEye ever existed because no merger ever occurred, (b) Terry Fokas managed this this non-existent entity under the supervision of Clive Barrett and Emmanuel Correia, and (c) Mr. Fokas was the CEO of BioEye or held any position with BioEye. BioEye admits that Mr. Fokas was the CEO of Overwatch and performed the primary day-to-day management of Overwatch. BioEye lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph.

28. ALLEGATION NO. 28:

> In March 2020, Overwatch/BioEye was informed that, due to the Covid-19 pandemic, the RTO would be delayed until August 2020, Clive Barrett and Emmanuel Correia directed Terry Fokas to develop BioEye technology for sideline concussion testing for the Australian Football League (AFL). I was asked to continue to develop BioEye products for the AFL. I worked to define product requirements researched AFL league protocols for concussion, medical protocols, and competitive products. I reviewed device development requirements for usability in relation to product and customer requirements and worked with two different design teams in Israel to develop a prototype device.

**ANSWER**: BioEye admits that the RTO was delayed due to the Covid-19 pandemic and ultimately failed to occur. BioEye admits further that (a) BioEye and Overwatch collaborated on the BioEye technology regarding concussion testing for the AFL and (b) the Plaintiff performed the actions alleged in connection with the Plaintiff's engagement by Overwatch and as part of Overwatch's collaboration with BioEye.

BioEye denies that (a) any merged entity of Overwatch and BioEye ever existed because no merger ever occurred, (b) BioEye asked the Plaintiff to develop BioEye products for the AFL other than in connection with Plaintiff's role in Overwatch, which was collaborating with BioEye in anticipation of the failed RTO, and (c) the Plaintiff had substantial involvement in the development of the BioEye products.

BioEye lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph.

29. ALLEGATION NO. 29:

> I was also asked to identify COVID-19 related markets for BioEye technology. I researched PLR related to disease and found that PLR readings change with the onset of sepsis, an overreaction of the body's inflammation system. Sepsis is the primary cause of death of COVID-19 patients. Thus, I consulted experts and determined that BioEye technology could be used to identify the early onset of sepsis for patients sent home after a diagnosis of COVID-19, and this would help keep COVID-19 (as well as those suffering from other disease) patients safer by allowing medical personnel to monitor patients remotely. I formed product requirements and drove product development, wrote product and marketing documents, and applied for government grants. BioEye partnered with doctors in Italy to test the new BioEye Covid-19 product during the pandemic.

**ANSWER**: BioEye admits that (a) the Plaintiff, without BioEye's direction, was involved in Overwatch's efforts with respect to BioEye's sepsis detection technology and filed requests for government grants and approvals (which were ultimately denied) and (b) BioEye, in conjunction with an Israeli university, partnered with a hospital in Italy to test capabilities related to Covid-19. Upon information and belief, BioEye asserts that the Plaintiff's alleged actions were taken at the behest of Overwatch and for Overwatch's pecuniary interest in anticipation of the RTO. BioEye lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph.

30. ALLEGATION NO. 30:

> I was terminated in September 2020 and was told that Overwatch/BioEye merger would dissolve and there would be no RTO. I was told I would not be paid for my unpaid salary nor given any value for the shares that I had been promised in Rision.

**ANSWER**: BioEye denies that (a) there was any existing merger between Overwatch and BioEye that dissolved, (b) BioEye ever employed or otherwise engaged the Plaintiff in a position from which he could be terminated, and (c) BioEye agreed to pay the Plaintiff any salary or promised any shares in Rision Limited. BioEye lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph.

31. ALLEGATION NO. 31:

> However, BioEye continues to pursue the very markets I had identified with the very products I had developed using the intellectual property and documentation I created.

**ANSWER:** BioEye admits that it is pursing the concussion and sepsis detection markets and may pursue the law enforcement and drug impairment detection markets in the future. BioEye denies the remaining allegations of this paragraph.

32. ALLEGATION NO. 32:

> BioEye has contracted with the AFL to provide concussion testing. BioEye has restarted testing of the sepsis identification system in Italy. BioEye has contacted Motorola in the United States for access to the United States market for the law enforcement drug identification system.

**ANSWER**: BioEye admits that (a) it has restarted testing of the sepsis identification system in Italy and (b) had a single call with a Motorola representative in Israel regarding the law enforcement drug identification system in the United States. BioEye denies the remaining allegations in this paragraph. BioEye specifically denies that it (a) currently has any activity in the U.S. market and (b) has contracted with the AFL as of the date that the Complaint was filed.

33. ALLEGATION NO. 33:

> BioEye continues to prosecute the patent applications in which I am a named inventor and for which I was not paid.

**ANSWER**: BioEye admits that (a) it is continuing to prosecute the Patent Application in which the Plaintiff is named as a co-inventor and (b) BioEye has not paid the Plaintiff for his interest in the Patent Application. BioEye denies any implication that BioEye has any obligation to pay the Plaintiff for his interest in the Patent Application. BioEye lacks knowledge or information sufficient to form a belief about the truth of the allegation that the Plaintiff was not paid by any other entity for his efforts that culminated in the invention reflected in the Patent Application.

34. ALLEGATION NO. 34:

> V. Relief: State Briefly exactly what you want the court to do for you. Make no legal arguments and do not cite cases or statutes. Attach additional pages if necessary.
>
> I pray the court will award my full pay according to the agreement with Overwatch/BioEye of $499,000.
>
> I pray the court will assign the BioEye patent solely to me.

**ANSWER**: BioEye admits that the Plaintiff is seeking the relief indicated but denies that the Plaintiff is entitled to such relief from BioEye.

## DENIAL OF ALL ALLEGATIONS NOT ADMITTED

35. Pursuant to Rule 8(b)(3) of the Federal Rules of Civil Procedure, BioEye generally denies any remaining allegations in the Complaint, except those specifically admitted.

## FIRST AFFIRMATIVE DEFENSE

### (Facts Insufficient to State Any Cause of Action)

36. The Complaint as a whole, and each purported cause of action alleged therein, fails to state facts sufficient to constitute any plausible cause of action against BioEye upon which relief may be granted.

## SECOND AFFIRMATIVE DEFENSE

### (Waiver)

37. The Complaint, and any purported cause of action alleged therein related to the Patent Application, is barred on the ground that Plaintiff has expressly and/or impliedly waived the right to assert such causes of action by virtue of his verbal and/or written expressions or conduct. Among other bases for this affirmative defense, the Plaintiff executed the declaration in the Patent Application, in which the Plaintiff declared under penalty of perjury that he authorized the filing of the Patent Application and had reviewed and understood the contents of the Patent Application and authorized its filing.

## THIRD AFFIRMATIVE DEFENSE

### (Estoppel and Quasi-Estoppel)

38. By virtue of his actions and course of conduct, the Plaintiff should be estopped from asserting any of the purported causes of action in the Complaint with respect to the Patent Application against BioEye. Among other bases for this affirmative defense, BioEye incurred attorney's and filing fees to file the Patent Application in reliance on the Plaintiff's declaration in the Patent Application.

## FOURTH AFFIRMATIVE DEFENSE

### (Lack of Privity)

39. The Complaint as a whole, and each purported cause of action alleged therein, fails to establish that Plaintiff had any privity of contract with BioEye. Among other bases for this affirmative defense, BioEye is not the entity with which the Plaintiff alleges he entered into the contract under which the Plaintiff's asserted claims arise.

## FIFTH AFFIRMATIVE DEFENSE

### (Non-Occurrence of Condition Precedent)

40. The Complaint, and any purported cause of action alleged therein related to the Plaintiff's asserted agreed compensation, fails because the closing of the RTO was a condition precedent for to the Plaintiff's entitlement to his full salary and shares in Rision Limited (from any party) but the RTO never occurred.

## SIXTH AFFIRMATIVE DEFENSE

### (Statute of Frauds)

41. The Complaint, and any purported cause of action alleged therein related to the Plaintiff's asserted agreed compensation, is barred with respect to BioEye according to the statue of frauds.

[*Remainder of Page Intentionally Left Blank*]

WHEREFORE, PREMISES CONSIDERED, BioEye Ltd. respectfully requests that the Court deny the relief requested in the Plaintiff's Complaint in its entirety against BioEye, dismiss the Plaintiffs' Complaint in its entirety against BioEye, award BioEye its reasonable costs and attorneys fees incurred in defending against the Complaint, and grant such other and further relief as the Court deems just and proper.

Dated March 30, 2021					**PARKINS LEE & RUBIO LLP**

								*/s/ Lendard M. Parkins*
								Lenard M. Parkins (Lead Attorney)
								TX Bar No. 15518200
								R.J. Shannon
								TX Bar No. 24108062
								Pennzoil Place
								700 Milam Street, Suite 1300
								Houston, TX 77002
								Email: lparkins@parkinslee.com
								         rshannon@parkinslee.com
								Phone: 713-715-1660

								*Counsel to BioEye Ltd.*

**CERTIFICATE OF SERVICE**

      I hereby certify that on March 30, 2021, the forgoing document was served on the following parties (a) through the Court's CM/ECF System if registered to receive such service and (b) by U.S.P.S. first class mail, postage prepaid and email on the following parties:

Paul Morinville
514 Wharton Ave
Altoona, PA 16602
paul@morinville.net

Overwatch Digital Health, Inc.
c/o Terry Fokas, Esq.
17440 Dallas Parkway
Suite 230
Dallas, TX 75287
terryfokas_esq@yahoo.com

                                                                                           /s/ *Lenard M. Parkins*
                                                                                          Lenard M. Parkins