UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| **MORINVILLE,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 20-cv-00980-KPJ |
| | ) |
| **OVERWATCH DIGITAL HEALTH, INC. ET. AL,** | ) |
| | ) |
| Defendants. | ) |

**REPLY TO PLAINTIFF'S RESPONSE TO
MOTION OF BIOEYE, LTD. FOR SUMMARY JUDGMENT**

BioEye Ltd. ("BioEye"), by and through its undersigned counsel, hereby replies to the Plaintiff's response [Dkt. No. 58] (the "Response") to the Motion of BioEye, Ltd. for Summary Judgment [Dkt. No. 53] (the "Motion") as follows:

**SUMMARY**

1. The Plaintiff has submitted as summary judgment evidence eight (8) documents attached to the Response as Exhibits A through J (three of which are excerpts from a single document).

2. The Plaintiff's purported evidence fails to create a genuine dispute of material fact. Plaintiff's Exhibit A indicates that (a) Overwatch and BioEye reached an agreement regarding Overwatch's acquisition of BioEye in January 2020 but (b) that the transaction was scheduled to close immediately prior to the closing of the RTO. The undisputed evidence submitted by BioEye and the Joint Defendants proves that the RTO never occurred. Plaintiff's Exhibits B, C, D, E, F, G, H, and J are inadmissible hearsay with respect to BioEye or otherwise fail as competent summary judgment evidence. To the extent that these documents are considered, however, none

of them support a reasonable inference that Overwatch and BioEye merged into a single entity or that Terry Fokas had authority to bind BioEye in <u>July 2019</u>, when the Plaintiff was hired by Fokas pursuant to an oral contract. And the Response points to no evidence and makes no argument that Plaintiff was either the sole person to create the Technology or the sole inventor with respect the Patent Application. Plaintiff's Response does not undermine the Motion.

<b><u>PLAINTIFF'S PURPORTED SUMMARY JUDGMENT EVIDENCE</u></b>

  A. **Plaintiff's Exhibit A—First ASX Application**

  3. Plaintiff's Exhibit A is the January 2020 application for in-principal advice submitted to the Australian Securities Exchange (the "<u>ASX</u>") for approval of the RTO (the "<u>First ASX Application</u>").[1] The Response includes an excerpt from page 13 of the First ASX Application that provides that "[a]s a result of its acquisition of BioEye, Overwatch also conducts business activities in Tel Aviv, Israel where additional engineering resources and research and development efforts are located." But nowhere in the document does it indicate that the Overwatch and BioEye had formed a single, merged entity. And on the same page as the Plaintiff's quotation, it indicates that Overwatch's acquisition *had not* closed and *would not* close until the RTO occurred:

| Attach a group structure diagram showing the entity, all child entities and all persons expected to have substantial holdings in the entity as at listing. | Refer to **Annexure D**<br><br>In summary, all of the issued and outstanding capital shares of Overwatch will be acquired by Rision.<br><br>Immediately prior to Rision's acquisition of Overwatch, all of the issued and outstanding capital shares of BioEye will be acquired by Overwatch. |
|---|---|

  4. Page 7 of the First ASX Application indicates that (a) BioEye remained "an Israeli-domiciled entity," (b) "[i]n August 2019, Overwatch and BioEye commenced a technology

---

[1] The Plaintiff claims that the First ASX Application was not disclosed by BioEye in discovery (Response at p.4). That is not true. BioEye and the Joint Defendants provided a copy of the First ASX Application to the Plaintiff on April 30, 2021, in connection with their initial disclosures as I.D. Doc. 60. And BioEye identified the document in its responses to Plaintiff's Interrogatory No. 2 and 14. A copy of BioEye's response is attached as <u>Exhibit 4</u> hereto to demonstrate the Plaintiff's brazen willingness to lie to the Court.

collaboration effort[,]" (c) "Overwatch and BioEye reached an agreement in January 2020 for Overwatch to acquire all of the issued and outstanding capital shares of BioEye[,]" and (d) "[t]he closing of the Overwatch acquisition of BioEye [was] scheduled to take place immediately prior to the closing of Rision's acquisition of Overwatch":

> **Overwatch – BioEye History and Acquisition**
>
> BioEye is an Israeli-domiciled entity that was formed to develop eye-tracking technology which could capture and analyse ocular biomarkers to identify individuals at risk for neurodegenerative disease (e.g. Alzheimer's, Dementia, Parkinson's Disease). In August 2019, Overwatch and BioEye commenced a technology collaboration effort to develop a suite of products that utilized ocular biomarker analysis to detect changes in brain function. In conjunction with this collaboration, Overwatch and BioEye integrated their engineering and product development groups to further advance commercialization efforts of these products.
>
> In addition, the extensive background and expertise of BioEye's engineering team in developing cutting edge machine learning and artificial intelligence algorithms was heavily utilized by Overwatch to significantly increase the seizure detection accuracy of the Overwatch App. As a result of BioEye's machine learning acumen and the ongoing development and commercialisation efforts between the two companies, Overwatch and BioEye entered into an agreement in January 2020 for Overwatch to acquire all of the issued and outstanding capital shares of BioEye. The closing of the Overwatch acquisition of BioEye is scheduled to take place immediately prior to the closing of Rision's acquisition of Overwatch.

According to the Plaintiff's lead summary judgment evidence, there was no merger, Overwatch had not acquired BioEye and would not do so until consummation of the RTO, and there was not even an agreement for the acquisition until January 2020. It is undisputed that the RTO never occurred. The First ASX Application does not support any genuine dispute of material fact.

### B. Plaintiff's Exhibit B—March 27, 2020, Investor Letter

5.      Plaintiff's Exhibit B is a letter purportedly from Terry Fokas dated March 27, 2020, under the letterhead of "Overwatch Digital Health, Inc." (the "Investor Letter"). The Plaintiff argues that the Investor Letter is evidence that Overwatch acquired BioEye in September 2019 and that "the merged Overwatch/BioEye entity received investments in the form of convertible and promissory notes issued to investors . . . ."

6. Although the Investor Letter is impermissible hearsay with respect to BioEye, it does not support the Plaintiff's contentions if it is considered. The Investor Letter references BioEye and Overwatch as separate entities—"Overwatch Digital Health, Inc." and "BioEye, Ltd."—and says absolutely nothing about any merger. The entity seeking funding according to the Investor Letter is Overwatch, not the never-existing "Overwatch/BioEye." And the Investor Letter does not indicate that Overwatch's acquisition of BioEye had closed—rather, it says that Overwatch and BioEye reached an *agreement* regarding the acquisition in September 2019.

7. Even if, and solely for the sake of argument, Overwatch *had* closed on its acquisition of BioEye in September 2019, this would not create a genuine dispute as to whether Terry Fokas had authority to bind BioEye in July 2019. The uncontroverted evidence is that the Plaintiff was employed or otherwise engaged by Fokas prior any agreement for Overwatch to acquire BioEye. And the Plaintiff indicated in his response to BioEye's Interrogatory Nos. 1 and 2, reflected in Exhibit 1 hereto, that this was the *only* contract or communication regarding his asserted employment and compensation. (Pls. Resp. to BioEye's Interrog. Nos. 1 and 2). According to the Plaintiff's sworn statements, there was no subsequent contract with BioEye.

C. **Plaintiff's Exhibits C, D, and E—Excerpts from the July 2020 Presentation**

8. Plaintiff's Exhibits C, D, and E are excerpts from a PowerPoint presentation dated July 2020 (the "July 2020 Presentation"). (*See* Response at p.6, n.4). The July 2020 Presentation indicates that it was prepared by Overwatch and is therefore inadmissible as hearsay to prove the assertions contained therein against BioEye. If the Court nonetheless considers the July 2020 Presentation in connection with the Motion, however, the document must be considered in its entirety under Rule 1002 of the Federal Rules of Evidence. A copy of the full July 2020 Presentation was filed with the Court under seal at Docket No. 25.

i.) *Exhibit C—Pages 1-3 of the July 2020 Presentation*

9.	Plaintiff's Exhibit C consists of pages 1-3 of this document, which the Plaintiff asserts "shows that the merged 'Overwatch/BioEye' entity was tangibly created because BioEye named it and sought investment in it." (Response p. 6). Being charitable, it seems that the Plaintiff is referring to the document being titled "Rision, Ltd – Overwatch/BioEye Corporate Presentation." The Plaintiff also claims that this excerpt of the July 2020 Presentation shows that "BioEye marketed the merged Overwatch/BioEye to investors to attract investors."

10.	The Plaintiff's take and argument on his Exhibit C is illogical and contradicted by the rest of the July 2020 Presentation. If BioEye and Overwatch had formed a merged entity, then BioEye ceased its separate existence and could not have marketed anything to attract investors. Pages 12-19 of the July 2020 Presentation describe BioEye's products separately from the Overwatch App. Page 21 of the July 2020 Presentation describes BioEye and Overwatch as separately owning intellectual property. Page 22 of the July 2020 Presentation indicates that BioEye would receive vendor shares through the RTO. Page 25 of the July 2020 Presentation indicates that Eran Ferri was "President (BioEye, Ltd.)." And page 31 of the July 2020 Presentation indicates (a) that the document contains business information of "Overwatch Digital Health, Inc.[,]" (b) was prepared for information purposes only containing summary information that "does not purport to be complete[,]" (c) was not an offer to sell or solicitation of an offer to purchase securities, and (d) contained of "forward looking statements relating to future events[.]"

11.	The title of "Rision, Ltd. – Overwatch/BioEye Corporate Presentation" instead of "Rision Limited – Overwatch Digital Health, Inc./BioEye Ltd. Corporate Presentation" does not create a *genuine* dispute about anything.

        *ii.) Exhibit D—Page 24 of the July 2020 Presentation*

12.	Plaintiff's Exhibit D consists of page 24 of the July 2020 Presentation. In the Response, the Plaintiff argues that this excerpt shows that "members of BioEye's Board of

Directors are also members of the Overwatch/BioEye Board of Directors" and that "BioEye's Board of Directors became members of Overwatch/BioEye's Board of Directors."

13. Plaintiff's argument is baffling. Nothing in the July 2020 Presentation indicates that it describes a merged "Overwatch/BioEye" entity. And, as proven in the summary judgment evidence submitted by BioEye, the board of directors indicated in the Plaintiff's Exhibit D would have the exact same composition as the proposed board of directors of the post-RTO Rision. (Ferri Decl. Ex. D at p.7; Ferri Decl. Ex. E at p.3-4; Barret Decl. Ex. K at p.3-4; Correia Decl. Ex. L at p.3-4). An inference that the July 2020 Presentation described the board of a merged "Overwatch/BioEye" instead of the proposed post-RTO entity board is entirely unreasonable.

14. Moreover, the evidence in the record shows that BioEye's board of directors consisted of Eran Ferri, Dovi Yellin, and Clive Barrett. (Barrett Decl. Ex. C; Ferri Declaration ¶ 6). Emmanuel Correia was not a member of BioEye's board. Yet, Ferri and Yellin are not indicated as directors in the July 2020 Presentation. The July 2020 Presentation does not support what the Plaintiff says it does.

### iii.) *Exhibit E—Pages 25 and 26 of the July 2020 Presentation*

15. Plaintiff's Exhibit E contains pages 25 and 26 of the July 2020 Presentation. The Plaintiff asserts that it "shows that the management teams of Overwatch and BioEye were operating under a combined Overwatch/BioEye entity."

16. As with the other excerpts from the July 2020 Presentation, there is nothing in document to indicate that it was describing a merged entity as opposed to the post-RTO entity. The excerpt comprising Plaintiff's Exhibit E does not say that this was the management team of "Overwatch/BioEye." And because the document was allegedly created in July 2020, it does not create a genuine dispute with respect to whether Terry Fokas had authority to bind BioEye in July 2019 when the Plaintiff was employed or engaged by Fokas.

17.     Moreover, Plaintiff's Exhibit E affirmatively supports that Overwatch and BioEye remained distinct and separate legal entities. On Page 25 of the July 2020 Presentation, Eran Ferri is indicated as the President of "BioEye, Ltd." Any scintilla of evidence from Plaintiff's Exhibit E supporting the Plaintiff's imaginary merger is undone by the express reference to BioEye, Ltd.

**D. Plaintiff's Exhibit F—Purported Org Chart**

18.     Plaintiff's Exhibit F is a document that the Plaintiff says is an organizational chart of "Overwatch/BioEye" from January 2020 (the "Purported Org Chart"). The Plaintiff argues that this impermissible hearsay demonstrates that Overwatch and BioEye operated as a single entity.

19.     The Purported Org Chart does not demonstrate anything. Nothing in the document indicates whether the structure described therein was in effect, proposed to be implemented at a later date by Overwatch and BioEye, or was proposed for the post-RTO management.

20.     The Plaintiff makes noise over the fact that "BioEye's name is not listed anywhere" in the Purported Org Chart. That only makes the document *less* probative. The Purported Org Chart does not, on its face, even *hint* that BioEye and Overwatch might have merged into a single entity.

**E. Plaintiff's Exhibit G and H—March 20, 2020, Email and Attachment**

21.     Plaintiff's Exhibit G is an email chain dated March 19 and March 20, 2020 (the "March 20 Email"). Plaintiff's Exhibit H is one of the three attachments—two of which the Plaintiff failed to include with the Response[2]—to the March 20 Email with the title "Overwatch Monthly Expenses Commencing on April 1, 2020." The Plaintiff argues that the text of the March 20 Email and the inclusion of Dovi Yellin and Rotem Tzuk in Plaintiff's Exhibit H indicates that BioEye and Overwatch had merged into a single entity.

---

[2] Despite the Plaintiff's assertion that the March 2020 Email was produced in discovery by Overwatch, it was actually produced the BioEye and the Joint Defendants on April 30, 2021, as part of their initial disclosures as I.D. Docs. 223-226. The name of BioEye's counsel is on the top of the document as the result of saving the document in a .pdf format consistent with the procedure agreed to at the Rule 26(f) Conference. And the last email in the chain is Barrett forwarding the communication to Correia. It is hard to fathom *why* the Plaintiff is lying about this, but he is.

22.     This is contradicted by the contents of the March 30 Email. In the document, Terry Fokas responds to an inquiry from Clive Barrett, who was in turn responding to a request for funding from Fokas, by indicating $32,000 of past due amounts for BioEye and $160,545.48 of past due amounts for Overwatch. It does not indicate $192,545.29 owed by "Overwatch/BioEye." If anything, this is evidence provided by Plaintiff *against* any merger.

23.     Plaintiff's Exhibit H does not support the Plaintiff's claims.  Nothing in the document says that Overwatch and BioEye had merged and the inclusion of Yellin and Tzuk is *at least* equally consistent with such parties being involved with developing the Overwatch App as part of the pre-RTO collaboration of BioEye and Overwatch. As described in the Declaration of Dovi Yellin (Exhibit 7 to the Motion):

> As part of this collaboration, [Yellin] worked extensively on improving the Overwatch App using my expertise in machine learning to train Overwatch's underlying algorithm. . . . In December 2019, Overwatch elected to have [Yellin] and the BioEye engineering team take over development of the seizure detection algorithm. By implementing machine learning algorithms and automated algorithm training techniques, the detection accuracy increased to 82% by the end of December 2019 and then over 95% by June 2020. As the result of these efforts Overwatch was able to perform a commercial launch of the Overwatch App in April 2020.

(Yellin Decl. ¶ 11). Fokas including in the budget Yellin and Tzuk—but not other BioEye employees, consultants, or contractors—equally supports the inference that BioEye and Overwatch were collaborating in their respective self-interests as separate legal entities.

24.     The two other attachments the Plaintiff failed to submit along with the March 20 Email are indicated at the top of Plaintiff's Exhibit E as reflected in the following snapshot:

**Attachments:**  Monthly Burn Rate Effective April 1, 2020).docx; ATT00001.htm; Unpaid Invoices - BioEye (15 March 2020).xlsx; ATT00002.htm; Unpaid Invoices - Overwatch (19 March 2020).xlsx; ATT00003.htm

The Court should consider these additional attachments under Rule 1002 of the Federal Rules of

8

Evidence. A copy of the attachment indicated as "Unpaid Invoices – BioEye (15 March 2020).xlsx" is attached hereto as Exhibit 3 (the "BioEye Unpaid Spreadsheet"). It reflects unpaid invoices of BioEye, not a merged "Overwatch/BioEye" entity. A copy of the attachment indicated as "Unpaid Invoices – Overwatch (19 March 2020).xlsx" is attached hereto as Exhibit 4 (the "Overwatch Unpaid Spreadsheet"). It reflects unpaid invoices of Overwatch.

25. The BioEye Unpaid Spreadsheet and the Overwatch Unpaid Spreadsheet summarily cut off and defeat any inference of a merger or that BioEye was liable for the amounts owed to the Plaintiff under his oral contract with Fokas. The fact that these are separate documents indicates that BioEye and Overwatch maintained separate accounting records and financial systems. But more critically, the Overwatch Unpaid Spreadsheet indicates that **_Overwatch_**—not BioEye—owed the Plaintiff amounts totaling $2,500 as of March 19, 2020:

**Unpaid Invoices- as of 3/19/2020**

| Vendor | Notes | Invoice Date | Due Date | Amount |
|---|---|---|---|---|
| [Omitted] | | | | |
| Paul Morinville- Partial | March Invoice | 1-Mar | 1-Apr | $ 2,500.00 |

Considering all of the attachments thereto, the March 20 Email is evidence that Overwatch and BioEye did *not* merge and that BioEye was *not* liable for any compensation to the Plaintiff.

**F. Plaintiff's Exhibit I—Correia Notes**

26. Plaintiff's Exhibit I contains notes produced by Emmanuel Correia (the "Correia Notes"). The Plaintiff concocts a theory based on the words "AFL paperwork" contained in the Correia Notes that BioEye engaged in clandestine negotiations with the AFL in anticipation of wrongfully canceling the RTO.

27. This is another inference without any support. There is nothing in the Correia Notes that suggests that the "AFL paperwork" was a contract. Nor is there any basis in the Correia Notes or the other summary judgment evidence to suggest that the Correia Notes reflect "secret"

9

discussions between BioEye and the AFL. It is pure, unjustified speculation, not the stuff the law requires for a genuine dispute sufficient to preclude summary judgment.

28. And the Plaintiff's *own sworn statements* shows that it was Terry Fokas—not Clive Barrett, as Plaintiff says in the Response—who instructed the Plaintiff to work on BioEye products for the AFL. The Plaintiff's response to BioEye's Interrogatory No. 12 was as follows:

> INTERROGATORY NO. 12: Identify the individual who asked You to continue to develop BioEye products for the AFL, as you alleged on page 5 of the Complaint.
>
> Answer: Terry Fokas

This is inconsistent with secret negotiations between BioEye and the AFL.

### G. Plaintiff's Exhibit J—March 12, 2021, Guardian Article

29. Plaintiff's Exhibit J is an article from The Guardian dated March 12, 2021 (the "Guardian Article"). The Response asserts that the Guardian Article shows that BioEye had contracted with the AFL prior to the Plaintiff filing this lawsuit on December 21, 2020.

30. Despite being obvious inadmissible hearsay, the Guardian Article does not assert that there was any contract between BioEye and the AFL as of March 12, 2021, much less as of December 21, 2020. The Guardian Article says only that the AFL wrote clubs to encourage them to participate in a study. It does not say anything about a contract or the date of any contract. That is all a product of the Plaintiff's desperate, unsupported, and irrelevant speculation.

### CONCLUSION

31. The evidence submitted by the Plaintiff fails to support what the Plaintiff argues or affirmatively contradicts the Plaintiff's assertions. No reasonable fact finder could conclude from the evidence in the record that BioEye is liable for any compensation owed to the Plaintiff under the oral contract made by and with Terry Fokas or that the Plaintiff is entitled to sole ownership of the Patent Application or the Technology. The Court should therefore grant BioEye's Motion.

| | |
|---|---|
| Dated: December 17, 2021 | **PARKINS LEE & RUBIO LLP**<br><br>*/s/ Lenard M. Parkins*<br>Lenard M. Parkins<br>TX Bar No. 15518200<br>R. J. Shannon<br>TX Bar No. 24108062<br>Pennzoil Place<br>700 Milam Street, Suite 1300<br>Houston, TX 77002<br>Email: lparkins@parkinslee.com<br>           rshannon@parkinslee.com<br>Phone: 713-715-1660<br>Fax:    713-715-1669<br><br>-and-<br><br>**BRAGALONE OLEJKO SAAD PC**<br>Terry A. Saad<br>TX Bar No. 24066015<br>2200 Ross Avenue, Suite 4500W<br>Dallas, TX 75201<br>Email:  tsaad@bosfirm.com<br>Phone: 214-785-6670<br>Fax:    214-785-6680<br><br>*Counsel to BioEye Ltd.* |

**CERTIFICATE OF SERVICE**

      I hereby certify that on December 17, 2021, the forgoing document was served on the following parties (a) through the Court's CM/ECF System if registered to receive such service and (b) by U.S.P.S. first class mail, postage prepaid and/or email on the following parties as follows:

Paul Morinville  
3902 Sequoia Trail West  
Georgetown, TX 78628  
paul@morinville.net  
[via U.S.P.S. and email]

Terry Fokas, Esq.  
Overwatch Digital Health, Inc.  
17440 Dallas Parkway  
Suite 230  
Dallas, TX 75287  
terry.fokas@overwatchdh.com  
[via CM/ECF and email]

                                                  */s/ Lenard M. Parkins*  
                                                  Lenard M. Parkins