IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| PAUL MORINVILLE, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil No. 4:20-cv-980-KPJ |
| § | |
| OVERWATCH DIGITAL § | |
| HEALTH, INC. *et al.*, § | |
| § | |
| Defendants. § | |

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant BioEye, Ltd.'s ("BioEye") Motion to Dismiss (the "BioEye Motion") (Dkt. 69) and Defendants Clive Barrett ("Barrett"), Emmanuel Correia ("Correia"), and Rision Limited's ("Rision") Joint Motion to Dismiss (the "Joint Motion") (Dkt. 70). Both motions are fully briefed: Plaintiff Paul Morinville ("Plaintiff") filed responses to both motions (Dkts. 72, 73); Defendants filed replies (Dkts. 74, 75). Upon consideration, the BioEye Motion (Dkt. 69) is **DENIED** and the Joint Motion (Dkt. 70) is **GRANTED IN PART** and **DENIED IN PART**.

## I. BACKGROUND

### A. Factual Overview

This case arises from Plaintiff's alleged employment with BioEye and former Defendant Overwatch Digital Health, Inc. ("Overwatch").[1] *See generally* Dkt. 68. Plaintiff, proceeding *pro se*, seeks to recover monetary damages against Defendants and an assignment of intellectual

---

[1] Plaintiff voluntarily dismissed his claims against Overwatch with prejudice by filing a stipulation of dismissal pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii). *See* Dkt. 59; *Nat'l City Golf Fin. v. Scott*, 899 F.3d 412, 415 and n.3 (5th Cir. 2018) (an unconditional stipulation of dismissal signed by the plaintiff and the party to be dismissed is effective upon filing).

property rights. Plaintiff asserts claims for unjust enrichment, breach of contract, quantum meruit, and fraud, as well as claims concerning the assignment of intellectual property rights, against Defendants. *See id.*

1. *Alleged Business Relationship between BioEye, Overwatch, and Rision*

Plaintiff alleges Overwatch and BioEye entered into a term sheet in July 2019, whereby Overwatch agreed to acquire BioEye. *Id.* at 18. Plaintiff alleges, prior to the acquisition, Barrett was a "[s]ignificant shareholder of Bioeye, a member of the board of directors of Bioeye, and a 'major debt holder' in Overwatch." *Id.* at 6. Plaintiff alleges Correia was a shareholder of BioEye and a "major debt holder" in Overwatch before the alleged acquisition. *Id.*

Plaintiff contends that after the alleged acquisition, Barrett and Correia "through their extensive shareholdings in BioEye and their ownership of a majority of Overwatch's issued debt exercised oversight and direction as well as day-to-day executive management of Overwatch/BioEye operationally and financially including management activities such as hiring, firing, spending, marketing, product features, and vendor selection." *Id.* Plaintiff alleges Barrett and Correia's management decisions were executed by Terry Fokas ("Fokas"), who Plaintiff alleges served as the chief executive officer of the combined Overwatch and BioEye entity ("Overwatch/BioEye") beginning in July 2019. *Id* at 5.

According to Plaintiff, Overwatch/BioEye intended to "consummate a reverse takeover" or merge with Rision in April 2020 (the "RTO"). *Id.* at 6. Plaintiff claims, upon the RTO, Overwatch/BioEye was to change its name to Overwatch Technologies, LTD, and would trade on the ASX with an "initial market capitalization of 15 million dollars." *Id*.

*2. Plaintiff's Alleged Employment with Overwatch/BioEye*

Plaintiff alleges Fokas contacted him in June 2019, and invited him to "work for Overwatch/BioEye to identify viable markets for the new products that Overwatch/BioEye needed to develop." *Id.* at 6–7. Plaintiff contends Fokas verbally offered to compensate Plaintiff "$15,000 in monthly fees and 2% of Rision shares upon completion of the RTO" with such shares being valued at $300,000. *Id.* at 7. Plaintiff alleges he was "asked to accept delayed payment of a portion of [his] monthly fees until the completion of the RTO" due to Overwatch/BioEye's limited funding. *Id.* Plaintiff further alleges he was to receive the remainder of his monthly fees, as well as the promised Rision shares, upon completion of the RTO. *Id.* "Relying on the representations made of the merged Overwatch/BioEye entity and the RTO," Plaintiff alleges he "agreed with these terms and began [his] engagement with Overwatch/BioEye in July 2019." *Id.*

In March 2020, after the RTO had been rescheduled from April to August 2020, Plaintiff alleges he was asked "to continue work without [his] monthly fee" until completion of the RTO, at which point he would receive all unpaid fees and the promised Rision shares. *Id.* at 7, 13. Plaintiff asserts that, based on these promises, he agreed. *Id.* at 13.

Plaintiff alleges he worked for Overwatch/BioEye from July 2019 until September 2020. *Id.* at 7. Plaintiff claims, with the exception of the Epilepsy App, he "worked exclusively on the new ocular biomarker products that Overwatch/BioEye was developing . . . ." *Id.* Plaintiff claims he worked on each of the following products: Eympair, Eympact, and Overwatch IDT. *Id.* at 8. Plaintiff alleges he created intellectual property related to the foregoing products, including:

> technologies, implementations and enhancements (and related documentation) for Eympact, Eympair and Overwatch IDT . . . , the backend applications supporting customers and administration, and a patent application that was filed with the United States Patent and Trademark Office which sets forth various claims of inventions related to these products.

*Id.* at 14. Plaintiff alleges he has a pending patent application for an "enhanced oculomotor testing device and method using an add-on structure for a mobil device." *Id.* He lists Paul Morinville and Dovi Yellen as the inventors of the device. *Id*. Plaintiff alleges he did not assign his rights to any of his claimed intellectual property to Overwatch/BioEye. *Id.*

Plaintiff alleges his employment with Overwatch/BioEye was terminated in September 2020. *Id.* at 7. At the time his employment was terminated, Plaintiff alleges he was owed $197,000.00 in monthly fees and $300,000, which was the value of the Rision shares he was allegedly promised. *Id*.

3. "Scuttling" of the RTO

Plaintiff alleges "it was represented to [him] that Overwatch and BioEye had merged into a single entity [, a] fact [which] was repeated to [him] throughout the course of [his] engagement with Overwatch/BioEye." *Id.* at 35. More specifically, Plaintiff alleges that during an "all hands dinner that Barrett hosted" in February 2020, Barrett "repeatedly took the position that Overwatch/BioEye was one unified entity and confirmed to [Plaintiff] that the goal of the combined company was to complete the RTO then scheduled for April 2020." *Id.* at 22–23. The RTO, however, never occurred. Plaintiff alleges BioEye was "in secret discussions" with the Australian Football League ("AFL") "as early as June 2020 to consummate [an] agreement . . . to test and ultimately use Eympact[,]" an agreement that was later consummated. *Id.* at 16–17. Plaintiff's contends "[t]his agreement with the AFL provided ample motivation for the Defendants to ensure the RTO (which would have included Overwatch, and which would have significantly reduced the amount of equity that would have inured to . . . Barrett, Correia, and BioEye's other shareholders if they had to share the proceeds of the RTO with Overwatch's shareholders and investors, and [Plaintiff]) did NOT take place so that they could realize the entire value of

4

Eympact." *Id.* at 17. Given this motivation, Plaintiff contends Defendants "purposefully scuttle[d] the Overwatch RTO." *Id.* at 18.

### B. Procedural History

On December 21, 2020, Plaintiff filed a Complaint against Defendants and Overwatch. *See* Dkt. 1. BioEye filed an answer, *see* Dkt. 16, and Overwatch filed an answer and an amended answer, *see* Dkts. 15, 40. The Joint Defendants filed a motion to dismiss, which was fully briefed. *See* Dkts. 12, 20, 24, 33.

Plaintiff filed an Amended Complaint on July 1, 2021, which rendered the motion to dismiss moot. *See* Dkts. 43, 46. On July 15, 2021, Defendants filed answers. *See* Dkts. 44, 45. Overwatch did not file an answer. On September 3, 2021, Defendants filed motions for judgment on the pleadings. *See* Dkts. 47, 48. These motions were fully briefed. *See* Dkts. 49, 50. On December 3, 2021, Defendants filed motions for summary judgment as to Plaintiff's claims for assignment of intellectual property rights and breach of contract. *See* Dkts. 53, 54. Plaintiff filed a response to the summary judgment motions, *see* Dkts. 57, 58, and Defendants filed replies, *see* Dkts. 61, 62.

On December 16, 2021, Overwatch filed a Stipulation of Dismissal signed by Plaintiff, wherein Plaintiff and Overwatch stipulated that all claims between them had been settled. *See* Dkt. 59. Defendants did not sign the Stipulation of Dismissal. *See id.*

On February 10, 2022, with leave of Court, Plaintiff filed his Second Amended Complaint, asserting claims for assignment of intellectual property rights, unjust enrichment, breach of contract, quantum meruit, and fraud. *See* Dkts. 66, 68. In his Second Amended Complaint, Plaintiff omits Overwatch as a defendant, noting Plaintiff and Overwatch settled all claims between them. *See* Dkt. 68 at 4. On February 24, 2022, the BioEye Motion and Joint Motion were filed. *See* Dkts.

69, 70. Plaintiff filed responses to Defendants' Motions, *see* Dkts. 72, 73, and Defendants filed replies, *see* Dkts. 74, 75. On March 4, 2022, Defendants jointly filed a Supplemental Motion for Summary Judgment as to Plaintiff's fraud claim. *See* Dkt. 71. On May 17, 2022, the Court denied the pending motions for judgment on the pleadings and motions for summary judgment as moot in light of Plaintiff's Second Amended Complaint and denied the supplemental motion without prejudice as improperly filed under the Local Rules of the Eastern District of Texas. *See* Dkt. 77.

As this case stands, the only motions pending before the Court are the BioEye Motion and the Joint Motion. By agreement of Plaintiff and Defendants, all deadlines in this action remain vacated pending the Court's resolution of the BioEye Motion and the Joint Motion. *See id*.

## II. LEGAL STANDARD

### A. Fed. R. Civ. P. 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move for dismissal of an action if the plaintiff fails to state a claim upon which relief can be granted. *See* FED. R. CIV. P. 12(b)(6). Because dismissals under Rule 12(b)(6) are disfavored, the Court must accept all well-pleaded facts in the plaintiff's complaint as true, "even if doubtful or suspect," and view them in the light most favorable to the plaintiff. *Peña Arita v. United States*, 470 F. Supp. 3d 663, 680 (S.D. Tex. 2020). However, the Court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (quoting *Plotkin v. IP Axess Inc*., 407 F.3d 690, 696 (5th Cir. 2005)).

A claim will survive an attack under Rule 12(b)(6) if, considering all well-pleaded facts, the complaint states a plausible claim for relief, rather than "the mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The well-pleaded facts must allow the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

"Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* When considering a motion to dismiss for failure to state a claim, the Court's review is limited to the complaint, any document attached to the complaint, and any document attached to the motion to dismiss that is central to the claim and referenced by the complaint. *See Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000)).

### B. Fraud

Under Federal Rule of Civil Procedure 9(b), a plaintiff "must state with particularity the circumstances of the allegedly fraudulent conduct—at minimum the who, what, when, and where." *Afshani v. Spirit SPE Portfolio 2006-1, L.L.C.*, No. 21-10137, 2022 WL 964201, at *3 (5th Cir. Mar. 30, 2022) (per curiam) (internal quotations omitted). "That is, a plaintiff pleading fraud must 'specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.'" *Sharifan v. NeoGenis Labs, Inc.*, — F. Supp. 3d. —, No. 4:21-cv-01940, 2022 WL 3567010, at *5 (S.D. Tex. Aug. 18, 2022) (quoting *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 564–65 (5th Cir. 2002)). What constitutes sufficient particularity will "necessarily differ with the facts of each case." *Afshani*, 2022 WL 964201, at *3 (cleaned up).

To state a claim for fraud under Texas law, a plaintiff must plead facts showing: (1) the defendant "made a material representation that was false"; (2) the defendant "knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth"; (3) the defendant "intended to induce the plaintiff to act upon the representation"; and (4) the plaintiff "actually relied upon the defendant's representation and . . . that such reliance was

7

justifiable." *JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 653 (Tex. 2018) (internal quotations omitted).

### III.   ANALYSIS

The Court reviews Plaintiff's state law claims under Texas law, *see* Dkt. 79 (Stipulation), and Plaintiff's intellectual property rights claim under federal law. After reviewing Plaintiff's Second Amended Complaint, the BioEye Motion, the Joint Motion, responses, replies, and the accompanying briefing, the Court finds Plaintiff has plausibly alleged sufficient facts to state unjust enrichment, breach of contract, quantum meruit, and fraud claims, as well as claims concerning the assignment of intellectual property rights, against BioEye, Barrett, and Correia.

The Court further finds Plaintiff has not plausibly alleged sufficient facts to state any claim for relief against Rision. Plaintiff alleges he was told he would receive "2% of Rision shares upon completion of the RTO . . . the value of [which] was $300,000." *Id.* Plaintiff does not allege any facts regarding actions taken by Rision as an entity or by any person employed by Rision. Besides mentioning Rision passively, in reference to the existence of the alleged planned RTO, Plaintiff only alleges Steve Rosich, the Chairman of the Board at Rision, became a member of the Overwatch/BioEye board of directors. *See id.* at 20. These passive references to Rision are simply not enough to make out Plaintiff's claims against Rision, even at the Motion to Dismiss stage. Accordingly, Plaintiff's claims against Rision are dismissed.

### IV.   CONCLUSION

For the foregoing reasons, the BioEye Motion (Dkt. 69) is **DENIED** and the Joint Motion (Dkt. 70) is **GRANTED IN PART** and **DENIED IN PART**. As to Plaintiff's claims against Barrett and Correia, the Joint Motion is **DENIED**. As to Plaintiff's claims against Rision, the Joint Motion is **GRANTED**. Accordingly, Plaintiff's claims against Rision are **DISMISSED**.

**So ORDERED and SIGNED this 30th day of September, 2022.**

_____
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE